IN THE UNITED STATES DISTRICT COURT
NORTHERNG DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN PRICE, | ) | CASE NO. 1:15-cv-1627 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| BRIGHAM SLOAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

I.      **Introduction**

Currently before the court is the petition of Christian Price, Ohio Inmate A630-198, for a writ of habeas corpus under 28 U.S.C. § 2254.  The matter was initially referred for report and recommendation to Magistrate Judge Greg White, who has since retired.  Subsequently, by minute order entered on March 29, 2016 – under the authority of General Order 2016-3 – the matter was referred to the undersigned for report and recommendation.

Price is currently incarcerated at the Lake Erie Correctional Institution pursuant to a journal entry issued by the Cuyahoga County, Ohio, Court of Common Pleas on April 29, 2015 on Price's conviction for kidnapping.[1]  For the reasons set forth below, it is recommended that the petition be dismissed with prejudice.

II.     **Relevant Factual Background**

The Ohio Court of Appeals for the Eighth Appellate District, set forth the following facts on direct appeal:

---

[1] ECF Doc. No. 9-3 at Ex. 51

{¶2}  Appellant, age 27, was accused of raping K.L., age 18. He was tried by a jury on one count of rape in violation of R.C. 2907.02(A)(2) and two counts of kidnapping in violation of R.C. 2905.01(A)(3) and 2905.01(A)(4), also including sexual motivation specifications. All three counts also included sexually violent predator specifications, which were tried to the bench.

{¶3}  At trial, K.L. testified she worked at McDonald's at the drive-through window. She testified that one day in December 2011, "a carful of guys" came through the drive-through window and a passenger in the car asked her for her phone number. She gave him her number "figuring [they] could just be friends." He told her his name was Christian.

{¶4}  A few days later, on December 16, she received a text message at 9:20 p.m. from Christian: "How do u spell ur name," and they began to exchange text messages. He talked about taking her out to dinner and asked her about her zodiac sign. The texts continued over the course of several days, leading to a long, late-night telephone conversation on December 26.

{¶5}  On December 27, the day of the incident, at around 10:30 a.m., appellant sent K.L. a text message inviting her to stop by his house before her shift started at McDonald's. K.L. testified she stopped at his house before heading to McDonald's to start her 3:00 p.m. shift. Her 17-year-old half-sister, C.J., drove with her and waited in the car while she went into his house at around 2:50 p.m. K.L. testified she just wanted to say "hi" and then go to work. When she got to the house, the door was open and appellant yelled for her to come up the stairs, where he was located in his bedroom. She went upstairs and went to the room he was in. She testified that appellant was not the person with whom she thought she had been communicating, and she froze. He said "hi." She testified:

> I was still standing there, and I just said, hi. I didn't want to be rude. And he asked me to come in. I'm like, no, I'm okay, I really got to go. And then that's when he got up and he came towards the door and that's when he grabbed me.
>
> * * *
>
> [He] grabbed my arm and that's when he put me on the bed. And I'm like, No, I don't want this and all of this stuff. And he just like, be quiet, it's okay, and he have all his body weight on me, and I couldn't move. I was froze[n].

{¶6}  She testified that she told him to stop because that was not what she went there for, and he told her to be quiet. He penetrated her with his penis, and his

body weight was holding her to the mattress and she could not move. The penetration lasted for two to three minutes while she was telling him no. He then ran out of the room and she jumped up. She further testified that before she left the room, he grabbed her and whispered in her ear, "you're mine forever." She pulled away from him and immediately ran down the stairs to her car. She did not say anything to her sister and drove to her job at McDonald's. She did not tell anyone at McDonald's about the incident either.

{¶7}  Several text messages were exchanged following the incident beginning at 3:01 p.m. They consist of appellant asking K.L. about their sexual experience and K.L. indicating that she liked it, but that she did not want further contact with appellant.

{¶8}  Regarding the text messages exchanged on December 27 after 3:00 p.m., K.L. testified that it was her sister who sent those messages. She stated she gave her sister, C.J., the phone so she could listen to music while she waited in the seating area of McDonald's for K.L. to finish her shift. C.J. testified she had the phone the entire time K.L. was working because C.J. was listening to music, but she did not remember receiving texts from appellant or replying to those texts, other than a response at 6:00 to a text sent by appellant where C.J. informed him that she was C.J. and she had her sister's phone while K.L. was at work. K.L. insisted that her sister sent these messages.

{¶9}  K.L. testified that she worked from 3:00 p.m. to 10:00 p.m. that day, and she denied sending any texts from her phone during that period. K.L. told her sister what happened after her shift. She also related the incident to her friend G.B. and asked for her advice. K.L.'s mother eventually found out about the incident when she saw K.L.'s text messages to G.B. Her mother took K.L. to a doctor to be examined for sexually transmitted diseases. She then filed a police report.

{¶10}  Detective Novitski of the Euclid Police Department testified that three months after the rape charge was brought, he retrieved the text messages from appellant's cell phone provider. Because the text messages exchanged after 3:00 p.m. appeared to him to be inconsistent with rape, he asked K.L. to return to the police station, but did not inform her of his concerns or that he had a transcript of the texts. When shown the text messages, K.L. told Det. Novitski that her sister had her phone after 3:00 p.m., and her sister would have sent all the text messages, including the response, "Yea * * * but I cant do it no more," sent at 3:07 p.m. in response to appellant's text sent immediately after the incident at 3:01 p.m. that asked, "U like," as well as the message from her phone that reads, "You are too grown for me." Det. Novitski immediately called K.L.'s sister C.J. after he

walked K.L. to the door of the police station, after being with her the entire time she was at the police station, and C.J. stated she must have sent the messages because she had the phone for the duration of K.L.'s shift.

{¶11}  Det. Novitski testified that C.J. told him she talked with her sister telling her that she was getting messages, and K.L. told her to "just answer him and get rid of him."

{¶12}  At trial, C.J. testified that she went with her sister to her job at McDonald's on December 27, 2011. She waited in the car for her sister after she went inside appellant's house. She testified that K.L. was inside for about five or six minutes. When K.L. came out of the house, she got back in the car, and appellant followed her out and was saying something to her. K.L. seemed to be "in a hurry," and "looked disheveled like she was thinking about something." K.L. did not say anything to her about what had happened inside.

{¶13}  At the close of the trial, the jury began deliberating. After one day, the jury foreperson informed the trial court that the jurors were split on the rape count without specifically stating they were deadlocked. The court, after confirming with the foreperson that the jury was indeed unable to reach a unanimous verdict, gave the Howard charge to the jury.  The jury had also asked the trial court whether it could deliberate on Count 2 (kidnapping) if it could not reach a verdict on the rape count, to which the trial court replied affirmatively. The jury continued to deliberate after the Howard charge. At one point, the foreperson again informed the trial court of the split status of their votes — this time without specifying which count. At this point, the defense sought a mistrial, which the trial court denied.

{¶14}  Thereafter, one of the jurors informed the court in a written note that "it is apparent to me that we have a high potential to not resolve the deliberations today" and that he had an important business trip the following day. He asked the court what his options were. In response, the court instructed the jury: "Each jury member is a member of a deliberating jury. Each member is expected to stay with deliberations until the end. The court has no way of knowing when the jury will conclude its work." After this instruction, the jury reached a verdict within the same afternoon session.

{¶15}  The jury found appellant not guilty on the rape count and the count of kidnapping for the purpose of terrorizing the victim (R.C. 2905.01(A)(3)). The jury, however, found him guilty of the count of kidnapping for the purpose of

4

engaging in sexual activity (R.C. 2905.01(A)(4)) with a sexual motivation specification.[2]

### III.     Relevant State Procedural History

#### A.        Original Proceedings Leading to Conviction

On January 30, 2012, a grand jury in Cuyahoga County issued an indictment charging Price with one count of rape in violation of O.R.C. § 2907.02(A)(2) with a sexually violent predator specification, one count of kidnapping in violation of O.R.C. § 2905.01(A)(3) with specifications for sexual motivation  and sexually violent predator, and one count of telecommunications harassment in violation of O.R.C. § 2917.21(A)(1).[3]

Price waived his right to a jury trial as to the sexually violent predator specifications.[4] The case proceeded to a jury trial.  The trial court granted an acquittal, pursuant to Ohio Criminal Rule 29, as to Count Four and denied it as to Counts One, Two and Three, but ordered the clause "inflicting serious physical harm," stricken from Count Three.[5]

On September 10, 2012, the jury returned a verdict finding Price not guilty of rape in Count One and not guilty of kidnapping in Count Three.[6]  The jury found Price guilty of kidnapping on Count Two.[7]  The trial was continued and, on September 28, 2012, the trial court found Price guilty of the sexually violent predator specification attached to Count Two.[8]  The trial court then sentenced Price to a prison term of 10 years to life.[9]  The trial court also found him to be a Tier III sex offender.[10]

---

[2] *State v. Price*, 8th Dist. No. 99058, 2013-Ohio-3912, 2013 Ohio App. LEXIS 4079.
[3] ECF Doc. 9-1 at Ex. 1
[4] ECF Doc. 9-1 at Ex. 3
[5] ECF Doc. 9-1 at Ex. 4; Trial Tr. Vol. 3, pp. 578-580
[6] ECF Doc. 9-1 at Ex. 5
[7] Id.
[8] ECF Doc. 9-1 at Ex. 6
[9] ECF Doc. 9-1 at Ex. 7
[10] ECF Doc. 9-1 at Ex. 8

### B.       Direct Appeal

Price, represented by counsel, filed a notice of appeal on October 16, 2012 with the

Eighth District Court of Appeals.[11]  In his merit brief, Price raised the following assignments of

error:

1.  Appellant's conviction for kidnapping with a sexual motivation specification is against the manifest weight of the evidence.

2. The trial court abused its discretion and committed plain error by failing to give an instruction to the jury regarding the affirmative defense of "safe release" where the undisputed evidence established that the alleged victim had been released in a safe place unharmed.

3.  The evidence was insufficient to support a conviction for a first degree felony under O.R.C. § 2905.01(A)(4) by virtue of O.R.C. § 2905.01(C)(1) because the undisputed evidence established that the alleged victim had been released in a safe place unharmed.

4.  Appellant was denied effective assistance of counsel.  Sixth and Fourteenth Amendments to the United States Constitution; Article I, Section 10, Ohio Constitution.

  A.  The failure of defense counsel to request a charge on the affirmative defense of "safe release" constitutes ineffective assistance of counsel.

  B.  The failure of defense counsel to address the kidnapping charge in final argument constitutes ineffective assistance of counsel.

5.  The trial court committed plain error by instructing the jury that "proof of motive is not required" when both the rape and kidnapping charges contained sexual motivation specifications.

6.  The trial court's premature use of a Howard charge, followed by an instruction that essentially ignored the plea of a deliberating juror, who had alerted the court to an important upcoming business trip, to be excused from further participation in the deliberations had a coercive effect on the jury and resulted in a denial of due process of law.

7.  Appellant's conviction on the sexual predator specification under Count II of the indictment is against the manifest weight of the evidence.[12]

---

[11] ECF Doc. 9-1 at Ex. 9
[12] ECF Doc. 9-1 at Ex. 10

The state filed a brief opposing the assignments of error raised by Price and Price filed a reply brief.[13]  On April 24, 2013, Price moved for leave to file a supplemental assignment of error.[14]  The court of appeals granted Price's motion for leave on May 16, 2013.[15]  In his supplemental brief, Price raised a supplemental assignment of error as follows:

> 8. The subsequent reversal of Appellant's prior conviction for rape, kidnapping, and telephone harassment, which were used to secure a conviction for the sexually violent predator specification, requires the reversal of Appellants' conviction on the sexually violent predator specification.[16]

The state filed a brief opposing Price's supplemental assignment of error.[17]

In a journal entry and opinion dated September 12, 2013, the Eighth District Court of Appeals affirmed the judgment of the trial court.[18]  The court of appeals determined that Price's convictions were not against the manifest weight of the evidence and that he did not receive ineffective assistance of counsel.  The court of appeals further determined that the trial court's jury instructions were proper and that there was no evidence that any error in the jury instructions would have changed the outcome of the trial.  The court of appeals opined that the trial court had not erred in giving a *Howard* charge to the jury.  Regarding the supplemental assignment of error, the court of appeals determined that it presented a matter outside the record before the court and that it was premature.[19]

---

[13] ECF Doc. 9-1 at Ex. 11 and 12
[14] ECF Doc. 9-1 at Ex. 13; Price moved to supplement his appeal after his conviction in an earlier case, CR-549930, was vacated and the matter was remanded for a new trial.  *State v. Price*, 8th Dist. No. 98410, 2013-Ohio-1542.  ("Price I")
[15] ECF Doc. 9-1 at Ex. 16
[16] ECF Doc. 9-1 at Ex. 13
[17] ECF Doc. 9-1 at Ex. 18
[18] ECF Doc. 9-1 at Ex. 19
[19] Id.

On September 19, 2013, Price filed an application for reconsideration and an application for *en banc* consideration with the court of appeals.[20]

On December 5, 2013, Price, through counsel, filed a timely notice of appeal to the Supreme Court of Ohio.[21]  In his Memorandum in Support of Jurisdiction, Price asserted the following propositions of law:

> 1.  A trial court must take judicial notice of a decision that vacates a defendant's conviction for a prior sexually oriented offense if that conviction was used to find that the defendant was a sexually violent predator under R.C. 2971.01(H)(2)(a).
>
> 2.  A trial court abuses its discretion if it gives a second supplemental *Howard* instruction but fails to tell the jury that it may conclude deliberations if the jury cannot reach a verdict.

The State of Ohio filed a memorandum in response.[22]  In an entry dated March 12, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4).[23]

### C.      Ohio Appellate Rule 26(B) Application to Reopen Appeal

On December 10, 2013, Price, through counsel, filed an Application for Reopening Appeal, pursuant to Appellate Rule 26(B).[24]  In his application Price argues that the court of appeals did not consider the following assignments of error in his direct appeal:

> 1.  Mr. Price's appellate attorney's performance was constitutionally ineffective because he did not file a motion asking this Court to take judicial notice of its decision in *Price I*, which vacated the convictions that the trial court relied on in *Price II* to find that Mr. Price was a sexually violent predator.  Had that fact been judicially noticed, this Court would have been compelled to vacate the sexually violent predator finding because it was based on insufficient evidence.

---

[20] ECF Doc. 9-1 at Ex. 20-21
[21] ECF Doc. 9-1 at Ex. 27
[22] ECF Doc. 9-1 at Ex. 29
[23] ECF Doc. 9-2 at Ex. 31
[24] ECF Doc. 9-2 at Ex. 32

    2. The trial court committed plain error when it used an acquitted offense to find that Mr. Price was a sexually violent predator and imposed a distinct punishment based on that finding.

    3. Mr. Price's trial attorney was ineffective when he did not object to the trial court's impermissible finding that Mr. Price was guilty of the rape and used that finding to impose an additional punishment.[25]

The State filed a memorandum in opposition to application for reopening.[26]  On May 13, 2014, the Eighth District Court of Appeals denied the application for reopening.[27]  The court held that the outcome of Price's appeal would not have been different if it had taken judicial notice of *Price I*.[28]  The court further held that it was within appellate counsel's discretion to decide which arguments to present on appeal and that the court would not reopen Price's appeal on the basis of ineffective assistance of counsel.[29]

       Through counsel, Price filed a timely notice of appeal in the Supreme Court of Ohio.[30]  In his memorandum in support of jurisdiction, Price submitted the following propositions of law:

    1. Both the United States and Ohio Constitutions prohibit the use of an acquitted offense as a means to finding that a defendant is a sexually-violent predator for purposes of imposing a distinct punishment based on that finding.

    2. A defendant deprived of the effective assistance of counsel when trial counsel fails to object to a trial court's decision to retry a defendant on an acquitted charge and uses the finding of guilty beyond a reasonable doubt on the acquitted charge to impose an additional punishment.

    3. A defendant is deprived of the effective assistance of appellate counsel when appellate counsel fails to raise reversible errors on direct appeal.

---

[25] Id.
[26] ECF Doc. 9-2 at Ex. 33
[27] ECF Doc. 9-2 at Ex. 34
[28] ECF Doc. 9-2 at Ex. 35
[29] Id.
[30] ECF Doc. 9-2 at Ex. 36

The State filed a memorandum opposing jurisdiction.[31]  In an entry dated September 24, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).[32]

    **D.**    **Petition to Vacate and Set Aside Judgment, O.R.C. § 2953.23**

On March 18, 2014, Price filed a *pro se* petition to vacate or set aside sentence in the Cuyahoga County Court of Common Pleas.  In his petition, Price argued that the reversal of his convictions in *Price I* required the trial court to vacate his conviction for the sexually violent predator specification.[33]  The State filed a response arguing that, despite the outcome in Price's other criminal case, Price was a sexually violent predator and the state should not be barred from retrying him on the sexually violent predator specification.[34]  Through counsel, Price moved to amend his petition for post-conviction relief on May 9, 2014.[35]  He then filed a motion for leave to file a motion for a new proceeding to determine the sexually violent predator specification.[36]  In a journal entry dated December 22, 2014, the trial judge granted a new trial to Price on the sexually violent predator specification.[37]

Price waived his right to a jury trial on the sexually violent predator specification.[38]  Following a hearing, the trial court issued a judgment in favor of defendant on the sexually violent predator specification and sentenced defendant to seven years in prison for the kidnapping conviction.[39]

---

[31] ECF Doc. 9-2 at Ex. 36
[32] ECF Doc. 9-2 at Ex. 39
[33] ECF Doc. 9-2 at Ex. 40
[34] ECF Doc. 9-2 at Ex. 41
[35] ECF Doc. 9-2 at Ex. 43
[36] ECF Doc. 9-3 at Ex. 45
[37] ECF Doc. 9-3 at Ex. 49
[38] ECF Doc. 9-3 at Ex. 49-50
[39] ECF Doc. 9-3 at Ex. 51

### E. Appeal of 2015 Resentencing

Through counsel, Price filed a timely notice of appeal in the Eighth District Court of

Appeals.[40]  In his merit brief, Price asserted the following assignments of error:

1. Appellant's sentence is contrary to law because the trial court indicated a
   bias toward Price by implying its belief that Price was guilty of acquitted
   conduct.

2. Appellant's sentence is contrary to law because the trial court was motivated
   by vindictiveness toward appellant.

3. Appellant's sentence is contrary to law because the trial court failed to
   follow the underlying purposes of felony sentencing and the sentence is
   inconsistent with sentences for similar offenses committed by similar
   offenders.[41]

The State filed a brief opposing the assignments of error raised by Price.[42]  The appeal is

pending.

## IV. Federal Habeas Corpus Petition

On August 14, 2015, Price filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  In his petition, Price asserts the following grounds for relief:

**GROUND ONE:**
Petitioner's conviction was obtained by the prosecutor's use of perjured
testimony. *See Mooney v. Holohan,* 249 U.S. 103.

**SUPPORTING FACTS:**
The alleged victim was interviewed by prosecutor prior to testifying at trial.  The
alleged victim made many false statements during trial as shown by the
statements of facts contained n Appellant's Brief & Reply Brief on direct appeal
to Eighth District Court of Appeals in Case No. CA-99058.  The Prosecutor's use
of this knowingly false testimony denied the Petitioner's fundamental rights, as
the Petitioner had no way to defendant against that false testimony.

---

[40] ECF Doc. 9-3 at Ex. 52
[41] ECF Doc. 9-3 at Ex. 53
[42] ECF Doc. 9-3 at Ex. 54

Further, once the prosecutor heard Ms. Krishawna giving false testimony see Reply Brief p. 2-6, Prosecutor had a duty to uphold the Law. (correction) alleged victim Krishawna Lee full name.

**GROUND TWO:**

Mr. Price's conviction for kidnapping with sexual motivation specification is against the weight of evidence, and based on insufficient evidence because there was no evidence presented at trial that petitioner was guilty beyond a reasonable doubt of sex without consent.

**SUPPORTING FACTS:**

The Petitioner was charged by indictment Count I Rape; Count II kidnapping, Count II kidnapping (for purpose of engaging in sexual activity with victim); Count III kidnapping (for purpose of terrorizing or inflicting serous physical harm upon the victim).  Count IV Telephone harassment. The State's theory was based on RAPE all other charges stem from the rape charge.

The Jury found Petitioner NOT GUILTY OF RAPE, the Judge dismissed Count IV. The Jury also found Petitioner NOT GUILTY OF KIDNAPPING with a sexual motivation specification Count III.  The Jury did find Petitioner guilty of kidnapping and sexual motivation in Count II.  The evidence proves he should have been found NOT GUILTY of this charge.  See Appellant's Brief and Reply Brief, Case No. CA-099058.

**GROUND THREE:**

Trial court denied petitioner due process of law by failing to give instruction to jury of affirmative defense of "safe release" where undisputed evidence established alleged victim had been released in a safe place.

**SUPPORTING FACTS:**

The facts show the alleged victim was not kidnapped at all, she came to visit me to have sex, the jury found me not guilty of Count III kidnapping, but guilty of kidnapping the same person in Count II of the indictment which is double jeopardy, right?

For the complete legal facts and law please read my Appellate Brief p. 18-19, and Reply Brief p. 7-10 STATE V. PRICE No. CA-99058.

**GROUND FOUR:**

Petitioner was denied due process of law where the evidence was insufficient to support conviction for kidnapping because undisputed evidence shows alleged

12

victim released in safe place unharmed, conviction violates Jackson v. Va., 443 U.S. 307.

**SUPPORTING FACTS:**

I am not guilty of kidnapping as the trial transcript shows me and the alleged victim were just experimenting with sex, these crimes I am not guilty of, I don't have a record, this is my first time and God willing my last time every losing my Freedom.

For all the records and laws because I am a layman I ask the Court to review my Appellate Brief at p. 19-20, and Reply Brief at p. 7-10, thank you.

**GROUND FIVE:**

The petitioner was denied effective assistance of counsel. Sixth and Fourteenth Amendments to United States Constitution: Article I, § 10 Ohio Constitution.

A. The failure of defense counsel to request a charge on the affirmative defense of "safe release" constitutes ineffective assistance of counsel.

B. The failure of defense counsel to address the kidnapping charge in final argument constitutes ineffective assistance of counsel.

This petitioner not being legal trained relies on the argument made by Appellate counsel as contained in State v. Price, Case No. 99058 (Cuyahoga County Ohio, Court of appeals) see Appellant's Brief p. 20-23, and Reply Brief, p. 7-10.

**GROUND SIX:**

The trial court denied petitioner due process of law and committed a miscarriage of justice which denied him fundamental fairness where trial court instructed the jury that "proof of motive is not required" when both the rape and kidnapping charges contained sexual motivation specifications.

Your Honor please review the arguments of my appellate counsel as seen in my appellate Brief at p.24 State v. Price, Case No. 99058.

**GROUND SEVEN:**

The trial court denied petitioner due process of law where trial court's premature use of a Howard charge, followed by an instruction that essentially ignoring the plea of a deliberating juror, who had alerted the court to an important upcoming business trip, to be excused from further participation in the deliberations had a coercive effect on the jury and resulted in a denial of fundamental fairness.

This Habeas Corpus ground of for relief was reviewed by the Ohio Supreme Court see State v. Price, Case No. 13-1912 (Memorandum in Support of Jurisdiction p. 9-10), and the argument contained in Appellate Brief p. 24-25. Petitioner asks the Federal Court to apply those same arguments made in State Court here.

**GROUND EIGHT:**

The petitioner's conviction of the sexual predator specification under Count II of the indictment is against the manifest weight of evidence and based insufficient evidence where as here the jury found petitioner not guilty of rape.

This ground for relief was raised in the Ohio Supreme Court exhausting state remedies. Further petitioner being a layman of the Law asks this Habeas Corpus Court to consider the law and arguments seen in State v. Price, Case No. CA-099058 (8th Dist. Ct. App.), use appeal brief pages 25-28.

The Appellate Brief shows there was no evidence presented to the trial court for me to be found guilty beyond a reasonable doubt.  Plus Your Honor the Jury found me not guilty of rape because we had consensual sex, I have never raped anybody in my life.

**GROUND NINE:**

Petitioner's counsel provided ineffective assistance of counsel on collateral review in violation of Martinez v. Ryan, 132 S.Ct. 1309 (2012).

My collateral Appeal Attorney Kelly Mihocik appeared as a Trojan Horse, because Petitioner did not contact Att. Mihocik nor does Mr. Price the Petitioner know how Ms. Mihocik obtained his address.  But Mr. Price needing a Lawyer, could not think to refuse her assistance, as a layman in Law.

However, petitioner wanted Att. Mihocik to further appeal habeas corpus Grounds 2-8, and he had no idea Att. Mihocik did not appeal all those grounds for relief to the Ohio Supreme Court until it was too late for petitioner to act.

The United State Federal District Court is asked to review all grounds for relief 1-8, because Att. Mihocik had a duty to exhaust state remedies by raising those grounds for relief in the Memorandum in Support of Jurisdiction see Case No. 2013-1912 State v. Price (filed 12-5-2013 Ohio Supreme Court), certainly where the facts of this case show consensual sex between two adults.[43]

---

[43] ECF Doc. 1, pp. 5-6, 8-9, 14-16

V.      **Applicable Law**

    A.      **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County sentenced petitioner and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this court has jurisdiction over petitioner's § 2254 petition.[44]

    B.      **Exhaustion**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction by means of federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. See *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander,* 912 F.2d 878, 881-883 (6th Cir. 1990).

    C.      **Procedural Default**

A federal court may not review "contentions of federal law… not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state

---

[44] ECF Doc. No. 9-3 at Ex. 51; 28 U.S.C. § 115(a)

procedure." *Wainwright v. Sykes,* 443 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); see also *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

If the State argues that a petitioner had procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule… Second, the court must decide whether the state courts actually enforced the state procedural sanction… Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim… This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate. . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

### D.  Cognizable Federal Claim

A federal court's consideration of a petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a

16

petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates f. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

## E.    Actual Innocence

In *Schlup v. Delo*, 513 U.S. 298, 314-315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a habeas petitioner who makes a "colorable showing of factual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s] considered on the merits." This exception is concerned with actual, as opposed to legal, innocence and must be based on reliable evidence not presented at trial. *Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 559 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. at 324.

17

## VI.     Analysis

### A.     Ground One

In Ground One, Price contends that the prosecutor's use of perjured testimony at trial denied petitioner of his fundamental rights.  The respondent argues that Price failed to raise this argument on appeal and that it is procedurally defaulted.  As stated above, the court is required to apply the *Maupin* test to determine whether Price's claim is procedurally defaulted.

Price's argument that the prosecution used perjured testimony at trial was not raised in the state courts.  He is therefore barred from raising it in Ohio because he had the previous opportunity to present it during his direct appeal, and failed to do so, thus waiving the issue under state procedural law.[45]  *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).  This is an adequate and independent state ground.  See *Lordi v. Ishee,* 384 F.3d 189,194, 2004 Ohio App.LEXIS 19040 (6th Cir. 2004).  Because Price was required to present this claim to the Ohio courts first to satisfy the exhaustion requirement, but is now barred from doing so due to Ohio's procedural rule, the second requirement that the state courts actually enforced the procedural rule is fulfilled.  *Id.,* citing *Coleman v. Thompson,* 501 U.S. 722, 735, 115 L.Ed.2d 640, 111 S.Ct. 2546 (1991).

Because Price failed to raise the issue of perjured testimony in the state courts, and thereby waived his ability to raise it under Ohio law, he is required to demonstrate both cause and prejudice in order to present this issue in the context of a habeas corpus petition.  *Coleman,* 501 U.S. at 749-750.  This "must ordinarily turn on whether the prisoner can show that some

---

[45] Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of res judicata. *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967).  Claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial must be raised in a postconviction action pursuant to R.C. § 2953.21. *State v. Cole,* 2 Ohio St. 3d 112, 2 Ohio B. 661, 443 N.E.2d 169 (1982).  In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to Ohio R. App.P.26(B).

objective factor external to the defense impeded [his] efforts to comply with the State's

procedural rule.  Without attempting an exhaustive catalog of such objective impediments to

compliance with a procedural rule, we note that a showing that the factual or legal basis of a

claim was not reasonably available to counsel, or that some interference by officials made

compliance impracticable, would constitute cause under the standard."  *Murray v. Carrier,* 477

U.S. at 488 (1986).  Price has not demonstrated any cause for failing to raise Ground One in the

state courts.

　　　　Price's only reason for failing to exhaust his remedies on this ground was "due to

ineffective assistance of appellate counsel."  Ineffective assistance of counsel, if independently

pleaded and proved, can establish cause for a default.  *Id.; Edwards v. Carpenter*, 529 U.S. 446,

451 (2000).  However, if the ineffective assistance of counsel claim is also defaulted, a petitioner

must demonstrate cause and prejudice in order to raise it as well.  *Edwards,* 529 U.S. at 453.

Price did not raise the issue of perjured testimony or the issue of ineffective assistance of counsel

in relation to any perjured testimony in his 26(B) application or his petition to the Ohio Supreme

Court and he has not demonstrated any cause for failing to do so.  *Id.*  Thus, Price has also

defaulted on any ineffective assistance of counsel claim in relation to Ground One and it cannot

serve as cause for his default on the underlying claim.

　　　　Regarding the "prejudice" component, the Supreme Court has indicated that "[t]he

habeas petitioner must show not merely that the errors … created a *possibility* of prejudice, but

that they worked to his *actual* and substantial disadvantage infecting his entire trial with error of

constitutional dimensions.  Such a showing of pervasive actual prejudice can hardly be thought

to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at

trial." *Murray,* 477 U.S. at 494.  Price has not demonstrated cause or prejudice and the *Maupin* criteria have been satisfied as to Count One.

The court is also required to consider whether plaintiff's procedural default on this ground should be excused because the alleged constitutional violation has "probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  Price has not presented any new evidence of actual innocence and there is no basis for excusing his procedural default on Ground One of his petition.  For these reasons, the undersigned recommends that the Court dismiss Ground One of Price's habeas petition.

      **B.**      **Ground Two**

      **1. Procedural Default for Failing to Raise Issue to Ohio Supreme Court**

In Ground Two Price contends that his conviction for kidnapping with a sexual motivation specification was against the weight of the evidence and based on insufficient evidence.  While this issue was partially raised as an issue on direct appeal, Price did not raise this claim in his appeal to the Supreme Court of Ohio.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. The exhaustion doctrine, first announced in *Ex parte Royall,* 117 U.S. 241, 29 L. Ed. 868, 6 S. Ct. 734 (1886), is now codified at 28 U.S.C. § 2254(b)(1).

In *O'Sullivan v. Boerckel,* 526 U.S. 838, the U.S. Supreme Court held that, by failing to present some of the issues to the state's court of last resort in a petition for discretionary review, the petitioner had failed to exhaust his remedies as to those claims.  *O'Sullivan,* 526 U.S. at syllabus.  The Court further reasoned that those claims had been procedurally defaulted because

the deadline for filing the petition for a discretionary appeal had expired. *O'Sullivan* 526 U.S. at 848.

As indicated above, this court must determine whether Price's claim stated in Ground Two has been waived by applying the *Maupin* test.  Like the petitioner in *O'Sullivan,* Price failed to present some of his claims, including Ground Two, to the Supreme Court of Ohio in his memorandum in support of jurisdiction.  The deadline for filing a memorandum with the Ohio Supreme Court has expired.   See S.Ct.R.II Sec.2.  Thus, there is a state procedural rule with which Price is now unable to comply.  This rule is an adequate and independent state ground on which the state is relying to foreclose review of Ground Two of Price's habeas petition. *See Tanner v. Jeffreys,* 516 F.Supp.2d 909, 2007 U.S. Dist.LEXIS 77615.  Thus, the court must consider whether there was cause for Price's failure to follow the procedural rule and whether he was actually prejudiced.  *Maupin,* 785 F.2d at 138.

A federal court may consider an otherwise barred claim if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 749-750 (1991).  This ordinarily turns on "whether the prisoner can show that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  Here, petitioner asserts that his counsel was ineffective for failing to appeal this issue to the Ohio Supreme Court.  While attorney error amounting to ineffective assistance of counsel may amount to cause within the cause and prejudice doctrine, an attorney error cannot constitute cause where the error caused the petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel, including a discretionary appeal. *Id.*  citing *Coleman,* 501 U.S. at 751-53.  The constitutional right to appointed counsel extends to the first right of appeal

21

and no further.  *Id.* citing *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct.1990, 95 L.Ed.2d 539 (1987).  Because Price was not entitled to counsel when filing a discretionary appeal with the Ohio Supreme Court, ineffective assistance of counsel cannot constitute cause and excuse his procedural default in this case.  Nor has Price shown that any other objective external factor caused his failure to comply with the state's procedural rule.

Price has also failed to show pervasive actual prejudice or that he was denied 'fundamental fairness' at trial." *Murray,* 477 U.S. at 494.  Finally, Price has not presented any new evidence of actual innocence and there is no basis for excusing his procedural default on Ground Two of his petition.  For these reasons, the undersigned finds that Ground Two of Price's habeas petition was procedurally defaulted and recommends that it be dismissed.

### 2.  Procedural Default - Manifest Weight vs. Insufficient Evidence

Ground Two of Price's petition asserts that his conviction for kidnapping with a sexual motivation specification was against the weight of the evidence and based on insufficient evidence.  However, in his direct appeal to the Eighth District Court of Appeals, Price argued only that this conviction was against the manifest weight of the evidence.

Both the United States and Ohio Supreme Courts have recognized that the standard employed when reviewing a claim that a guilty verdict was against the manifest weight of the evidence is both quantitatively and quantitatively different from the standard used when considering a constitutional due process claim upon the sufficiency of the evidence.  See *Tibbs v. Florida,* 457 U.S. 31, 44-45 (1982); *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E. 2d 541, 546 (1997).  "A reversal based on the insufficiency of the evidence has the same effect as [a verdict of not guilty] because it means that no rational factfinder could have voted to convict the defendant." *Tibbs,* 457 U.S. at 41.  Whereas "[a] reversal on [the weight of the evidence], unlike

a reversal based on insufficient evidence, does not mean that acquittal was the only proper

verdict.  Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's

resolution of the conflicting testimony."  *Tibbs*, 457 U.S. at 42.

Respondent argues that Price also procedurally defaulted on his insufficient evidence

claim referenced in Ground Two because he did not raise this issue in state court.[46]  Respondent

cites *Freeman v. Warden, Belmont Corr., Inst.,* No. 2:09-cv-317, 2012 U.S. Dist. LEXIS 126445

(S.D. Ohio, Sept. 6, 2012) in support of his argument.  However, in *Nash v. Eberlin,* 258 Fed.

App'x 761, 765 n.4 (6th Cir. 2007), the Sixth Circuit liberally construed a pro se habeas

petitioner's manifest weight of the evidence claim to be one challenging sufficiency of the

evidence. The court found that Ohio courts had "adequately passed upon" the petitioner's

sufficiency claim because the "determination by the Ohio Court of Appeals that the conviction

was supported by the manifest weight of the evidence necessarily implies a finding that there

was sufficient evidence." *Id*. at 765.  A review of recent case law shows that numerous decisions

from this district have relied on *Nash* for the proposition that a claim for insufficient evidence is

not procedurally defaulted when the petitioner raised a manifest weight of the evidence argument

in state court.  Thus, the undersigned finds that Price's claim asserted in Ground Two was not

procedurally defaulted for failing to explicitly argue that the conviction for kidnapping with a

sexual motivation was based on insufficient evidence on direct appeal.  However, as noted

above, Price did procedurally default this claim by not raising it on appeal to the Ohio Supreme

Court.

---

[46] Respondent also asserts this argument in relation to Ground Eight of Price's petition.

### C.     Grounds Three and Six

#### 1.  Procedural Default for Failing to Raise Issue to Ohio Supreme Court

In Ground Three, Price asserts that the trial court denied him due process of law by

failing to give an instruction to the jury of the affirmative defense of "safe release."  In Ground

Six, Price contends that the trial court denied him due process of law when instructing the jury

that "proof of motive is not required."  As with Count Two, Price failed to assert these issues in

his petition to the Ohio Supreme Court.  He has also failed to show cause or prejudice for his

failure to comply with the state procedural rule.  Nor has he shown that he is actually innocent.

For these reasons, these claims were waived by procedural default.

#### 2.  Procedural Default – Contemporaneous Objection Rule

Additionally, in relation to Ground Three, Price failed to request a "safe release"

instruction during the trial of his case.  In considering the argument asserted in Ground Three of

Price's habeas petition, the Eighth District Court of Appeals held:

> Generally "[a]n appellate court is to review a trial court's decision regarding a jury
> instruction to determine whether the trial court abused its discretion." *State v.
> Mitchell,* 11th Dist. Lake No. 2001-L-042, 2003 Ohio 190, ¶ 10, citing *State v.
> Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).  But here, appellant did not
> request such an instruction, and therefore has waived all but plain error. *State v.
> Hall,* 8th Dist. Cuyahoga No. 98615, 2013-Ohio-2900, ¶ 20.  Crim.R. 52(B)
> provides that "[p]lain errors or defects affecting substantial rights may be noticed
> although they were not brought to the attention of the court." The Ohio Supreme
> Court has instructed that "[n]otice of plain error under Crim.R. 52(B) is to be
> taken with the utmost caution, under exceptional circumstances and only to
> prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372
> N.E.2d 804 (1978), paragraph three of the syllabus.
>
> According to R.C. 2905.01(C)(1), if the victim of a kidnapping is released in a
> safe place unharmed, the level of felony is reduced to one of the second degree.
> However, "[w]hether a kidnapper releases his victim unharmed in a safe place 'is
> not an element of the offense; rather, the accused must plead and prove it in the
> fashion of an affirmative defense.'" *State v. Bolton,* 8th Dist. Cuyahoga No.
> 96385, 2012 Ohio 169, ¶ 55, quoting *State v. Sanders,* 92 Ohio St.3d 245, 265,
> 2001 Ohio 189, 750 N.E.2d 90 (2001).

This court has found plain error where the "safe place" instruction was not given when the evidence adduced at trial unequivocally showed that the victims of the kidnapping were, indeed, released unharmed. *State v. Carroll,* 8th Dist. Cuyahoga No. 93938, 2010 Ohio 6013, ¶ 16. There is no such unequivocal evidence in the present case.

Here, K.L. testified she was able to escape appellant's bedroom. She pulled away from appellant's grasp and ran down the stairs and out of the house. C.J. testified that K.L. left appellant's house quickly while being followed by appellant. Escaping from the clutches of a kidnapper is not the same as being released. *State v. Bowman,* 8th Dist. Cuyahoga No. 97165, 2012 Ohio 1355, ¶ 20.  K.L. also testified that she was raped during this time. Appellant's reliance on the jury's verdict finding him not guilty of rape asks this court to engage in hindsight review of the trial court's judgment. At the time the trial court gave the jury instructions, appellant had not established the elements of what amounts to an affirmative defense to necessitate the trial court instructing the jury as appellant now complains. Therefore, the trial court did not commit plain error when it did not give such a jury instruction.

In *Scott v. Mitchell,* 209 F.3d 854, 867 (6th Cir. 2000), the Sixth Circuit Court of Appeals held that plain error review by a state appellate court did not preclude a finding of procedural default when the appellate court also invoked a state procedural bar rule as a separate basis for the decision.  In *Scott,* the petitioner argued that his challenge to the penalty-phase jury instructions in his capital case was not procedurally defaulted by Ohio's contemporaneous objection rule.  After applying the *Maupin* test to this challenge, the Sixth Circuit disagreed and held that the challenge *was* procedurally defaulted.  *Scott*, 209 F.3d at 873.  In reaching this conclusion, the court of appeals determined that Ohio's contemporaneous objection rule was an independent and adequate state ground which applied to Scott.  The court also determined that, despite language in its decision referencing a plain error review, the Ohio Supreme Court had applied the contemporaneous objection rule to Scott's challenge.  Finally, the court determined that Scott had failed to show cause and prejudice or that a failure to consider his claims would have resulted in a fundamental miscarriage of justice.  *Id.*

Here, Price failed to request a "safe release" jury instruction or to object to the omission of such a jury instruction at trial. The court of appeals explicitly referenced this fact and stated that Price had waived all but plain error. Consequently, application of the *Maupin* test to Ground Three of Price's petition results in a procedural default unless Price can show cause and prejudice. *See Scott,* 209 F.3d 854, 867-68. Apart from an assertion of ineffective assistance of counsel, Price has not shown that an objective factor external to the defense impeded his efforts to comply with the contemporaneous objection rule. Nor has he demonstrated prejudice by showing that the results of the proceedings would have been different. He has also not shown that this is an extraordinary habeas corpus case where a constitutional violation has likely resulted in the conviction of one who is actually innocent. Thus, in addition to procedurally defaulting because this issue was not presented to the Ohio Supreme Court, Ground Three of Price's habeas petition is waived because he failed to contemporaneously object to the omission of the "safe place" jury instruction at trial.

### 3. Non-Cognizable Claim

Respondent also argues that the court should dismiss Price's habeas petition related to the omission of jury instructions on the basis that such a challenge is not cognizable in that it does not present a federal issue. A finding that Ground Three is procedurally defaulted renders a determination of whether the claim is cognizable unnecessary. However, the undersigned notes that the case law cited by respondent does not hold that a collateral attack of erroneous jury instructions is *never* permitted. Rather, it indicates that there is a heavy burden to establish a constitutional violation on this basis. For example, in *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977), a case cited by respondent, the U.S. Supreme Court stated,

> The burden of demonstrating that an erroneous instruction was so prejudicial that
> it will support a collateral attack on the constitutional validity of a state court's

26

judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the trial that the resulting conviction violates due process," not merely whether the "instruction is undesirable, erroneous, or even universally condemned."

While this holding clearly places a heavy burden on a petitioner asserting a due process violation based on an erroneous jury instruction, it does not stand for the proposition that a challenge to an erroneous jury instruction is never cognizable under federal law. Nonetheless, because Price waived the claim stated in Ground Three of his petition by failing to include it in his petition to the Ohio Supreme Court, further consideration of this issue is not necessary in relation to Counts Three and Six. The undersigned recommends that the court dismiss Grounds Three and Six on the basis that they have been procedurally defaulted.

### D. Grounds Four and Five

In Ground Four, Price asserts the he was denied due process of law where the evidence was insufficient to support a conviction for kidnapping because the victim was released in a safe place. In Ground Five, Price asserts that he was denied effective assistance of counsel. Price specifically argues that he was denied effective assistance of counsel because defense counsel failed to request a jury instruction related to the affirmative defense of "safe release," and because defense counsel failed to address the kidnapping charge in final arguments at trial.

As with the challenge asserted in Ground Two, Price failed to include the challenges stated in Grounds Four and Five in his petition to the Ohio Supreme Court. Due to his failure to exhaust his state remedies and to give the state courts a fair opportunity to act on his claims, the court is required to apply the *Maupin* test to determine whether Grounds Four and Five were waived through procedural default. The court's application of the *Maupin* criteria to Grounds Four and Five leads to the same result as that reached in relation to Ground Two. Price has

27

attempted to argue that ineffective assistance of counsel constituted cause for his default. However, as stated above, an attorney error cannot constitute cause where the error caused a petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to counsel. *Murray,* 477 U.S. at 488. Price has not shown that any objective factor external to the defense impeded his efforts to present these arguments in his petition to the Ohio Supreme Court. Nor has he demonstrated prejudice by showing that the results of the proceedings would have been different. He has also failed to demonstrate that this is an extraordinary habeas corpus case where a constitutional violation has likely resulted in the conviction of one who is actually innocent. Thus, he has waived Grounds Four and Five through procedural default.

It is worth noting here that Price did file a Rule 26(B) application to reopen his appeal based on ineffective assistance of counsel. However, in that application, Price's ineffective assistance challenges were related to the trial court's finding that he was a sexually violent predator and the impact that a prior conviction which was subsequently vacated had on that finding. He did not raise the ineffective assistance challenges in state court that he is now asserting in his habeas petition. Thus, he has procedurally defaulted on any such challenges and they cannot establish cause in these proceedings.

For the foregoing reasons, the undersigned finds that Grounds Four and Five of Price's habeas petition were procedurally defaulted and recommends that these grounds be dismissed.

     **E.    Ground Seven**

       **1.  Procedural Default – Failing to Present Federal Claim to State Court**

In Ground Seven of his petition, Price asserts that his due process rights were violated when the trial court prematurely gave a "Howard Charge" followed by an instruction that ignored the concerns of a juror who had alerted the court that he had an important upcoming

business trip.  This issue was arguably raised in Price's petition to the Supreme Court of Ohio; in

Proposition of Law Number Two, Price argued that "a trial court abuses its discretion if it gives a

second *Howard* instruction but fails to tell the jury that it may conclude deliberations if the jury

cannot reach a verdict."  However, a closer examination of Price's Proposition of Law Number

Two leads to the conclusion that he only challenged the trial court's application of state law in

his petition to the Ohio Supreme Court.  He did not alert the highest state court to the federal

constitutional issue he now asserts in relation to this claim.

      Before seeking federal habeas relief, state prisoners must first exhaust their available

state court remedies by fairly presenting all their claims to the state courts. *Whiting v. Burt,* 395

F.3d 602, 612 (6th Cir. 2005).  Ordinarily, the exhaustion requirement is satisfied once the

petitioner has fairly presented all his claims to the highest court in the state in which he was

convicted, thus giving the state a full and fair opportunity to rule on those claims before the

petitioner seeks relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct.

1728, 144 L. Ed. 2d 1 (1999).  In reviewing the state court proceedings to determine whether a

petitioner has "fairly presented" a claim to the state courts, courts have looked to the petitioner's:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance
> upon state cases employing federal constitutional analysis; (3) phrasing the claim
> in terms of constitutional law or in terms sufficiently particular to allege a denial
> of a specific constitutional right; or (4) alleging facts well within the mainstream
> of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).  While a petitioner need not cite "chapter and

verse" of constitutional law, " general allegations of the denial of rights to a 'fair trial' and 'due

process' do not 'fairly present claims' that specific constitutional rights were violated." *Blackmon*

*v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (internal citations omitted).

In his petition to the Ohio Supreme Court, Price only argued that the trial court abused its discretion in giving a second *Howard* charge and in failing to tell the jury it could conclude deliberations.  Price did not rely on any federal cases or make any reference to a constitutional violation or any federal law that would have alerted the highest state court to the nature of his federal claim.  Thus, he failed to properly present the federal grounds of his claim to the state court and thereby waived his ability to present those claims to this court.

As with his other claims, Price has also failed to show any cause for his failure to raise the federal issue involved in Count Seven to the Ohio Supreme Court.  Nor has he demonstrated prejudice by showing that the results of the proceedings would have been different.  He has also failed to present any new evidence of actual innocence and there is no basis for excusing his procedural default on Ground Seven of his petition.  Accordingly, the undersigned recommends that Ground Seven be dismissed because it was procedurally defaulted.

### 2.  Non-Cognizable Claim

Respondent also contends that Ground Seven is non-cognizable as it does not present a federal claim.  As state above, while challenges related to jury instructions rarely rise to the level of federal constitutional violations, such challenges may be considered in a federal habeas action if erroneous jury instructions deprived a petitioner of a fundamentally fair trial.  See *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 97 S. Ct. 1730 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986).  To warrant federal habeas corpus relief based on instructions that were allegedly erroneous under state law, a petitioner must demonstrate that the error violated a federal constitutional right and that the instructions "so infected the trial that the resulting conviction violates due process." See *Cupp v. Naughten,* 414 U.S. at 146; *Henderson,* 431 U.S. at 15.  Thus, the determination to be made with regard to Ground Seven is not whether

the trial court's *Howard* charge and instruction to continue deliberating were undesirable or erroneous under Ohio law, but whether those jury instructions so infected the entire trial that the resulting conviction violated due process. *Id.*

Here, it does not appear that the trial court erred in giving the *Howard* charge or in its instruction to continue deliberating.  In considering these issues, the court of appeals stated,

> After a full day of deliberations, the jury indicated it was deadlocked, and the court instructed it according to the language set forth by the Ohio Supreme Court.  The trial court did not abuse its discretion in so doing.  *State v. Rhines,* 2d Dist. No. 24417, 2012-Ohio-3393 (charge issued after 11 hours of deliberations); *State v. McDowell,* 10th Dist. No. 10AP-509, 2011-Ohio-6815 (charge given after jury deliberated one and one-half days); *State v. Shepard,* 10th Dist. No. 07AP-223, 2007-Ohio-5405, ¶ 11 (citing cases where the charge has been upheld after only a few hours of deliberations).

> The court's response to juror No. 13 was also not an abuse of discretion.  The requirement that a juror remain as part of the deliberating body through the end of trial is a necessary requirement to our system of trials.  Further, juror No. 13 disclosed the business trip during voir dire and said that, should trial continue to the date of the trip, it could be moved.  This juror was not impermissibly placed under compulsion to arrive at a verdict as appellant argues.  The court's instructions were impartial, measured, and most important, not coercive.

Moreover, even if Price *could* show that the trial court erred in giving these instructions, it would still be necessary for him to show that these alleged errors so infected the entire trial that the resulting conviction violated due process. *Id.*  The undersigned is not persuaded that these instructions implicated any federal constitutional deprivation.  It was within the trial judge's discretion to determine whether the jury was deadlocked and to provide the *Howard* charge, and she exercised that discretion only after consulting with the attorneys and questioning the jurors as to whether they were deadlocked.  Similarly, the instruction given to the jury regarding their duty to remain a part of the deliberating body through the end of the trial was proper.  There is no indication that these instructions so infected the entire trial that the resulting convictions violated due process.  Consequently, Price has not shown that these instructions violated a federal

constitutional right. For this reason, in addition to being procedurally defaulted, Ground Seven

should be dismissed because it fails to present a federal issue cognizable in § 2254 habeas

proceedings.  *See Weese v. Turner*, 1999 U.S. App. LEXIS 13616, *9-10 (6th Cir. Ohio June 15,

1999).

### F.      Ground Eight

In Ground Eight, Price alleges that the conviction on the sexual predator specification

under Count II of the indictment is against the manifest weight of the evidence and based on

insufficient evidence.  Ground Eight of Price's petition is moot following the trial court's

decision finding Prince not guilty of the sexual predator specification.[47]  For this reason, the

undersigned recommends that this ground be dismissed as moot.

### G.      Ground Nine

In Ground Nine, Price asserts that his counsel provided ineffective assistance of counsel

on collateral review in violation of *Martinez v. Ryan,* 132 S.Ct. 1309, 182 L.Ed.2d 272, 2012

U.S. LEXIS 2317 (2012)*.* As has been fully discussed above, Price has procedurally defaulted on

his ineffective assistance of counsel claim against Ms. Mihocik and his reference to *Martinez*

does not impact the analysis of that issue.  In *Martinez,* the U.S. Supreme Court held that a

prisoner has a right to effective counsel in collateral proceedings if those proceedings are the

prisoner's first opportunity to raise a claim of ineffective assistance of counsel.  *Martinez*

involved an Arizona law that precluded a convicted person alleging ineffective assistance of trial

counsel from raising that claim on direct review.  Instead, they were required to bring the claim

in state collateral proceedings.  The attorney representing Martinez at the collateral proceedings

did not raise any ineffective assistance claims.  In fact, she filed a certificate stating that she

found no meritorious claims helpful to petitioner.  Under those circumstances, the Court held that

---

[47] ECF Doc. No. 9-3 at Ex. 51

inadequate assistance of counsel at initial-review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel in habeas proceedings.  However, the Court limited its holding and specifically stated:

> The rule of Coleman governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial review collateral proceeding may be deficient for other reasons.

*Martinez,* 132 S.Ct. at 1320 [internal citations omitted].

In Ground Nine of his petition, Price contends that Attorney Kelly Mihocik provided ineffective assistance of counsel by failing to restate all the alleged errors asserted in his direct appeal when she filed a petition for discretionary appeal with the Ohio Supreme Court.  Price cites *Martinez* in support of his argument.  However, as discussed above, the *Martinez* case expressly excludes from its holding petitions for discretionary review.  The rule of *Coleman* governs and attorney error cannot constitute cause here where the error caused Price to default in a proceeding in which he was not constitutionally entitled to counsel.  *Murray v. Carrier,* 477 U.S. at 488, citing *Coleman,* 501 U.S. at 751-53.

As with his other claims, Price has failed to demonstrate prejudice by showing that the results of the proceedings would have been different.  He has also failed to present any new evidence of actual innocence and there is no basis for excusing his procedural default on Ground Nine of his petition.  For this reason, the undersigned recommends that the court dismiss Ground Nine of Price's petition on the basis of procedural default.

### H.    Recommendation Regarding Certificate of Appealability

#### 1.    Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### 2.  Analysis

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendation, Price cannot show that the Court's rulings on the procedural defaults of Grounds One through Six, Eight and Nine are questionable.  As noted above, Price did not exhaust these grounds in the state courts and, due to the expiration of his deadline to do so, he procedurally defaulted on those grounds.  Thus, the procedural default of Grounds One through Six, Eight and Nine is not debatable and the Court should conclude that Price is not entitled to a certificate of appealability as to those grounds.

With regard to Count Seven, an argument could be made that Price did not procedurally default.  Thus, while the undersigned has recommended that Ground Seven be dismissed due to a procedural default and because it presents a non-cognizable claim, the undersigned

recommends that a certificate of appealability issue as to Count Seven, should the court adopt the recommendation and dismiss that ground.

## VII.    Conclusion

For the reasons stated herein, the undersigned recommends that the court dismiss each of the grounds asserted in Price's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

Dated: June 23, 2016

Thomas M. Parker
U.S. Magistrate Judge

## VIII.  Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).