PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN PRICE, | ) | |
| | ) | CASE NO. 1:15cv1627 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| BRIGHAM SLOAN, WARDEN, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 23] |

Pending before the Court is Petitioner Christian Price's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Respondent Brigham Sloan filed a motion to dismiss the petition.  ECF No. 9.  United States Magistrate Judge Thomas M. Parker prepared a report in accordance with 28 U.S.C. § 636(b)(1)(B) and recommended the petition be dismissed. ECF No. 21.  Petitioner filed objections to the magistrate judge's report and its recommendations.  ECF No. 23.  The Court has reviewed the above filings, the relevant portions of the record, and the governing law.  For the reasons provided below, the Court overrules Petitioner's objections, adopts the magistrate judge's report and recommendation as modified herein, grants Respondent's motion to dismiss (ECF No. 9), and dismisses the petition.

## I.  Factual and Procedural Background

### A.  Synopsis of the Facts

The Ohio Eighth District Court of Appeals set forth the following facts, which are entitled to a presumption of correctness until rebutted by clear and convincing evidence.  28

(1:15cv1627)

U.S.C. § 2254(e)(1); *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010):

{¶2}  Appellant, age 27, was accused of raping K.L., age 18. He was tried by a jury on one count of rape in violation of R.C. 2907.02(A)(2) and two counts of kidnapping in violation of R.C. 2905.01(A)(3) and 2905.01(A)(4), also including sexual motivation specifications. All three counts also included sexually violent predator specifications, which were tried to the bench.

{¶3}  At trial, K.L. testified she worked at McDonald's at the drive-through window. She testified that one day in December 2011, "a carful of guys" came through the drive-through window and a passenger in the car asked her for her phone number. She gave him her number "figuring [they] could just be friends." He told her his name was Christian.

{¶4}  A few days later, on December 16, she received a text message at 9:20 p.m. from Christian: "How do u spell ur name," and they began to exchange text messages. He talked about taking her out to dinner and asked her about her zodiac sign. The texts continued over the course of several days, leading to a long, latenight telephone conversation on December 26.

{¶5}  On December 27, the day of the incident, at around 10:30 a.m., appellant sent K.L. a text message inviting her to stop by his house before her shift started at McDonald's. K.L. testified she stopped at his house before heading to McDonald's to start her 3:00 p.m. shift. Her 17-year-old half-sister, C.J., drove with her and waited in the car while she went into his house at around 2:50 p.m. K.L. testified she just wanted to say "hi" and then go to work. When she got to the house, the door was open and appellant yelled for her to come up the stairs, where he was located in his bedroom. She went upstairs and went to the room he was in. She testified that appellant was not the person with whom she thought she had been communicating, and she froze. He said "hi." She testified:

> I was still standing there, and I just said, hi. I didn't want to be
> rude. And he asked me to come in. I'm like, no, I'm okay, I really
> got to go. And then that's when he got up and he came towards the
> door and that's when he grabbed me.
> * * *
> [He] grabbed my arm and that's when he put me on the bed. And
> I'm like, No, I don't want this and all of this stuff. And he just like,
> be quiet, it's okay, and he have all his body weight on me, and I
> couldn't move. I was froze[n].

{¶6}  She testified that she told him to stop because that was not what she went

2

(1:15cv1627)

there for, and he told her to be quiet. He penetrated her with his penis, and his body weight was holding her to the mattress and she could not move. The penetration lasted for two to three minutes while she was telling him no. He then ran out of the room and she jumped up. She further testified that before she left the room, he grabbed her and whispered in her ear, "you're mine forever." She pulled away from him and immediately ran down the stairs to her car. She did not say anything to her sister and drove to her job at McDonald's. She did not tell anyone at McDonald's about the incident either.

{¶7} Several text messages were exchanged following the incident beginning at 3:01 p.m. They consist of appellant asking K.L. about their sexual experience and K.L. indicating that she liked it, but that she did not want further contact with appellant.

{¶8} Regarding the text messages exchanged on December 27 after 3:00 p.m., K.L. testified that it was her sister who sent those messages. She stated she gave her sister, C.J., the phone so she could listen to music while she waited in the seating area of McDonald's for K.L. to finish her shift. C.J. testified she had the phone the entire time K.L. was working because C.J. was listening to music, but she did not remember receiving texts from appellant or replying to those texts, other than a response at 6:00 to a text sent by appellant where C.J. informed him that she was C.J. and she had her sister's phone while K.L. was at work. K.L. insisted that her sister sent these messages.

{¶9} K.L. testified that she worked from 3:00 p.m. to 10:00 p.m. that day, and she denied sending any texts from her phone during that period. K.L. told her sister what happened after her shift. She also related the incident to her friend G.B. and asked for her advice. K.L.'s mother eventually found out about the incident when she saw K.L.'s text messages to G.B. Her mother took K.L. to a doctor to be examined for sexually transmitted diseases. She then filed a police report.

{¶10} Detective Novitski of the Euclid Police Department testified that three months after the rape charge was brought, he retrieved the text messages from appellant's cell phone provider. Because the text messages exchanged after 3:00 p.m. appeared to him to be inconsistent with rape, he asked K.L. to return to the police station, but did not inform her of his concerns or that he had a transcript of the texts. When shown the text messages, K.L. told Det. Novitski that her sister had her phone after 3:00 p.m., and her sister would have sent all the text messages, including the response, "Yea * * * but I cant do it no more," sent at 3:07 p.m. in response to appellant's text sent immediately after the incident at 3:01 p.m. that asked, "U like," as well as the message from her phone that reads, "You are too grown for me." Det. Novitski immediately called K.L.'s sister C.J.

3

(1:15cv1627)

after he walked K.L. to the door of the police station, after being with her the entire time she was at the police station, and C.J. stated she must have sent the messages because she had the phone for the duration of K.L.'s shift.

{¶11} Det. Novitski testified that C.J. told him she talked with her sister telling her that she was getting messages, and K.L. told her to "just answer him and get rid of him."

{¶12} At trial, C.J. testified that she went with her sister to her job at McDonald's on December 27, 2011. She waited in the car for her sister after she went inside appellant's house. She testified that K.L. was inside for about five or six minutes. When K.L. came out of the house, she got back in the car, and appellant followed her out and was saying something to her. K.L. seemed to be "in a hurry," and "looked disheveled like she was thinking about something." K.L. did not say anything to her about what had happened inside.

{¶13} At the close of the trial, the jury began deliberating. After one day, the jury foreperson informed the trial court that the jurors were split on the rape count without specifically stating they were deadlocked. The court, after confirming with the foreperson that the jury was indeed unable to reach a unanimous verdict, gave the *Howard* charge to the jury. The jury had also asked the trial court whether it could deliberate on Count 2 (kidnapping) if it could not reach a verdict on the rape count, to which the trial court replied affirmatively. The jury continued to deliberate after the *Howard* charge. At one point, the foreperson again informed the trial court of the split status of their votes — this time without specifying which count. At this point, the defense sought a mistrial, which the trial court denied.

{¶14} Thereafter, one of the jurors informed the court in a written note that "it is apparent to me that we have a high potential to not resolve the deliberations today" and that he had an important business trip the following day. He asked the court what his options were. In response, the court instructed the jury: "Each jury member is a member of a deliberating jury. Each member is expected to stay with deliberations until the end. The court has no way of knowing when the jury will conclude its work." After this instruction, the jury reached a verdict within the same afternoon session.

{¶15} The jury found appellant not guilty on the rape count and the count of kidnapping for the purpose of terrorizing the victim (R.C. 2905.01(A)(3)). The jury, however, found him guilty of the count of kidnapping for the purpose of engaging in sexual activity (R.C. 2905.01(A)(4)) with a sexual motivation specification.

4

(1:15cv1627)

ECF No. 9-1 at PageID #: 279–84.  The trial court sentenced Petitioner to a prison term of 10

years to life.  ECF No. 9-1 at PageID #: 138.  The trial court also found Petitioner to be a Title III

sex offender.  ECF No. 9-1 at PageID #: 140.

**B.  Direct Appeal**

Petitioner, through counsel, filed a notice of appeal on October 16, 2012.  ECF No. 9-1 at

PageID #: 141.  Petitioner advanced the following assignments of error:

1. Appellant's conviction for kidnapping with a sexual motivation specification is
against the manifest weight of the evidence.

2. The trial court abused its discretion and committed plain error by failing to give
an instruction to the jury regarding the affirmative defense of "safe release" where
the undisputed evidence established that the alleged victim had been released in a
safe place unharmed.

3. The evidence was insufficient to support a conviction for a first degree felony
under Ohio Rev. Code §2905.01(A)(4) by virtue of Ohio Rev. Code
§2905.01(C)(1) because the undisputed evidence established that the alleged
victim had been released in a safe place unharmed.

4. Appellant was denied effective assistance of counsel. Sixth and Fourteenth
Amendments to United States Constitution; Article I, Section 10, Ohio
Constitution.

    A. The failure of defense counsel to request a charge on the
    affirmative defense of "safe release" constitutes ineffective
    assistance of counsel.

    B. The failure of defense counsel to address the kidnapping charge
    in final argument constitutes ineffective assistance of counsel.

5. The trial court committed plain error by instructing the jury that "proof of
motive is not required" when both the rape and kidnapping charges contained
sexual motivation specifications.

6. The trial court's premature use of a *Howard* charge, followed by an instruction
that essential ignoring the plea of a deliberating juror, who had alerted the court to

5

(1:15cv1627)

an important upcoming business trip, to be excused from further participation in
the deliberations had a coercive effect on the jury and resulted in a denial of due
process of law.

7. Appellant's conviction on the sexual predator specification under Count II of
the indictment is against the manifest weight of the evidence.

ECF No. 9-1 at PageID #: 148–49.  Petitioner, also through counsel, filed the following

supplemental assignment of error:

8. The subsequent reversal of Appellant's prior convictions for rape, kidnapping,
and telephone harassment, which were used to secure a conviction for the sexually
violent predator specification, requires the reversal of Appellant's conviction on
the sexually violent predator specification.

ECF No. 9-1 at PageID #: 242.  The appellate court affirmed Petitioner's conviction.  ECF No.

9-1 at PageID #: 306.  Petitioner sought reconsideration and en banc consideration, but the

appellate court denied both motions.  ECF No. 9-1 at PageID #: 369–70.

On December 5, 2013, Petitioner, through counsel, filed a timely notice of appeal to the

Supreme Court of Ohio, asserting the following propositions of law:

1. A trial court must take judicial notice of a decision that vacates a defendant's
conviction for a prior sexually oriented offense if that conviction was used to find
that the defendant was a sexually violent predator under R.C. 2971.01(H)(2)(a).

2. A trial court abuses its discretion if it gives a second supplemental *Howard*
instruction but fails to tell the jury that it may conclude deliberations if the jury
cannot reach a verdict.

ECF No. 9-1 at PageID #: 376.  The Supreme Court declined to accept jurisdiction.  ECF No. 9-2

at PageID #: 455.

6

(1:15cv1627)

### C.  Ohio Appellate Rule 26(B) Application to Reopen Appeal

On December 10, 2013, Petitioner, through counsel, filed an Application for Reopening

Appeal, pursuant to Appellate Rule 26(B).  ECF No. 9-2 at PageID #: 457.  Petitioner raised the

following assignments of error:

> 1. Mr. Price's appellate attorney's performance was constitutionally ineffective
> because he did not file a motion asking this Court to take judicial notice of its
> decision in Price I, which vacated the convictions that the trial court relied on in
> Price II to find that Mr. Price was a sexually violent predator. Had that fact been
> judicially noticed, this Court would have been compelled to vacate the sexually
> violent predator finding because it was based on insufficient evidence.
>
> 2. The trial court committed plain error when it used an acquitted offense to find
> that Mr. Price was a sexually violent predator and imposed a distinct punishment
> based on that finding.
>
> 3. Mr. Price's trial attorney was ineffective when he did not object to the trial
> court's impermissible finding that Mr. Price was guilty of the rape and used that
> finding to impose an additional punishment.

ECF No. 9-2 at PageID #: 461, 463–65.  On May 13, 2014, the Eighth District Court of Appeals

denied the application for reopening.  ECF No. 9-2 at PageID #: 540.  Petitioner appealed this

decision through counsel, submitting the following objections:

> 1. Both the United States and Ohio Constitutions prohibit the use of an acquitted
> offense as a means to finding that a defendant is a sexually violent predator for
> purposes of imposing a distinct punishment based on that finding.
>
> 2. A defendant deprived of the effective assistance of counsel when trial counsel
> fails to object to a trial court's decision to retry a defendant on an acquitted charge
> and uses the finding of guilty beyond a reasonable doubt on the acquitted charge
> to impose an additional punishment.
>
> 3. A defendant is deprived of the effective assistance of appellate counsel when
> appellate counsel fails to raise reversible errors on direct appeal.

ECF No. 9-2 at PageID #: 559.  The Supreme Court of Ohio declined to accept jurisdiction.  ECF

7

(1:15cv1627)

No. 9-2 at PageID #: 635.

### D.  Petition to Vacate and Set Aside Judgment

On March 18, 2014, Petitioner, *pro se*, filed a petition to vacate or set aside sentence in the Cuyahoga County Court of Common Pleas relating to his sexually violent predator specification.  ECF No. 9-2 at PageID #: 636.  Through counsel, Petitioner moved to amend his petition for post-conviction relief (ECF No. 9-2 at PageID #: 673) and for leave to file a motion for a new proceeding to determine the sexually violent predator specification.  ECF No. 9-3 at PageID #: 812.

On December 22, 2014, the trial judge granted Petitioner a new trial on the sexually violent predator specification.  ECF No. 9-3 at PageID #: 1015.  Following a hearing, the trial court entered judgment in favor of Plaintiff on the specification, and re-sentenced Petitioner to seven years of incarceration for the kidnapping conviction.  ECF No. 9-3 at PageID #: 1017.

### E.  Appeal of Resentencing

Petitioner, through counsel, appealed his resentencing and asserted the following assignments of error:

1. Appellant's sentence is contrary to law because the trial court indicated a bias toward Price by implying its belief that Price was guilty of acquitted conduct.

2. Appellant's sentence is contrary to law because the trial court was motivated by vindictiveness toward appellant.

3. Appellant's sentence is contrary to law because the trial court failed to follow the underlying purposes of felony sentencing and the sentence is inconsistent with sentences for similar offenses committed by similar offenders.

ECF No. 9-3 at PageID #: 1027.  The appeal is still pending.

8

(1:15cv1627)

### F.  Federal Habeas Corpus Petition

Petitioner filed a *pro se* petition for a writ of habeas corpus on August 14, 2015, and

asserted the following grounds for relief:

GROUND ONE:
Petitioner's conviction was obtained by the prosecutor's use of perjured
testimony. See Mooney v. Holohan, 249 U.S. 103.

SUPPORTING FACTS:
The alleged victim was interviewed by prosecutor prior to testifying at trial. The
alleged victim made many false statements during trial as shown by the statements
of facts contained in Appellant's Brief & Reply Brief on direct appeal to Eighth
District Court of Appeals in Case No. CA-99058. The Prosecutor's use of this
knowingly false testimony denied the Petitioner's fundamental rights, as the
Petitioner had no way to defendant against that false testimony.

Further, once the prosecutor heard Ms. Krishawna giving false testimony see
Reply Brief p. 2-6, Prosecutor had a duty to uphold the Law. (correction) alleged
victim Krishawna Lee full name.

GROUND TWO:
Mr. Price's conviction for kidnapping with sexual motivation specification is
against the weight of evidence, and based on insufficient evidence because there
was no evidence presented at trial that petitioner was guilty beyond a reasonable
doubt of sex without consent.

SUPPORTING FACTS:
The Petitioner was charged by indictment Count I Rape; Count II kidnapping,
Count II kidnapping (for purpose of engaging in sexual activity with victim);
Count III kidnapping (for purpose of terrorizing or inflicting serous physical harm
upon the victim). Count IV Telephone harassment. The State's theory was based
on RAPE all other charges stem from the rape charge.

The Jury found Petitioner NOT GUILTY OF RAPE, the Judge dismissed Count
IV. The Jury also found Petitioner NOT GUILTY OF KIDNAPPING with a
sexual motivation specification Count III. The Jury did find Petitioner guilty of
kidnapping and sexual motivation in Count II. The evidence proves he should
have been found NOT GUILTY of this charge. See Appellant's Brief and Reply
Brief, Case No. CA-099058.

9

(1:15cv1627)

GROUND THREE:
Trial court denied petitioner due process of law by failing to give instruction to
jury of affirmative defense of "safe release" where undisputed evidence
established alleged victim had been released in a safe place.

SUPPORTING FACTS:
The facts show the alleged victim was not kidnapped at all, she came to visit me
to have sex, the jury found me not guilty of Count III kidnapping, but guilty of
kidnapping the same person in Count II of the indictment which is double
jeopardy, right?

For the complete legal facts and law please read my Appellate Brief p. 18-19, and
Reply Brief p. 7-10 STATE V. PRICE No. CA-99058.

GROUND FOUR:
Petitioner was denied due process of law where the evidence was insufficient to
support conviction for kidnapping because undisputed evidence shows alleged
victim released in safe place unharmed, conviction violates Jackson v. Va., 443
U.S. 307.

SUPPORTING FACTS:
I am not guilty of kidnapping as the trial transcript shows me and the alleged
victim were just experimenting with sex, these crimes I am not guilty of, I don't
have a record, this is my first time and God willing my last time every losing my
Freedom.

For all the records and laws because I am a layman I ask the Court to review my
Appellate Brief at p. 19-20, and Reply Brief at p. 7-10, thank you.

GROUND FIVE:
The petitioner was denied effective assistance of counsel. Sixth and Fourteenth
Amendments to United States Constitution: Article I, § 10 Ohio Constitution.

> A. The failure of defense counsel to request a charge on the
> affirmative defense of "safe release" constitutes ineffective
> assistance of counsel.

> B. The failure of defense counsel to address the kidnapping charge
> in final argument constitutes ineffective assistance of counsel.

This petitioner not being legal trained relies on the argument made by Appellate
counsel as contained in State v. Price, Case No. 99058 (Cuyahoga County Ohio,

(1:15cv1627)

Court of appeals) see Appellant's Brief p. 20-23, and Reply Brief, p. 7-10.

GROUND SIX:
The trial court denied petitioner due process of law and committed a miscarriage of justice which denied him fundamental fairness where trial court instructed the jury that "proof of motive is not required" when both the rape and kidnapping charges contained sexual motivation specifications.

Your Honor please review the arguments of my appellate counsel as seen in my appellate Brief at p.24 State v. Price, Case No. 99058.

GROUND SEVEN:
The trial court denied petitioner due process of law where trial court's premature use of a Howard charge, followed by an instruction that essentially ignoring the plea of a deliberating juror, who had alerted the court to an important upcoming business trip, to be excused from further participation in the deliberations had a coercive effect on the jury and resulted in a denial of fundamental fairness.

This Habeas Corpus ground of for relief was reviewed by the Ohio Supreme Court see State v. Price, Case No. 13-1912 (Memorandum in Support of Jurisdiction p. 9-10), and the argument contained in Appellate Brief p. 24-25. Petitioner asks the Federal Court to apply those same arguments made in State Court here.

GROUND EIGHT:
The petitioner's conviction of the sexual predator specification under Count II of the indictment is against the manifest weight of evidence and based insufficient evidence where as here the jury found petitioner not guilty of rape.

This ground for relief was raised in the Ohio Supreme Court exhausting state remedies. Further petitioner being a layman of the Law asks this Habeas Corpus Court to consider the law and arguments seen in State v. Price, Case No. CA-099058 (8th Dist. Ct. App.), use appeal brief pages 25-28.

The Appellate Brief shows there was no evidence presented to the trial court for me to be found guilty beyond a reasonable doubt. Plus Your Honor the Jury found me not guilty of rape because we had consensual sex, I have never raped anybody in my life.

GROUND NINE:
Petitioner's counsel provided ineffective assistance of counsel on collateral review in violation of Martinez v. Ryan, 132 S.Ct. 1309 (2012).

11

(1:15cv1627)

> My collateral Appeal Attorney Kelly Mihocik appeared as a Trojan Horse, because Petitioner did not contact Att. Mihocik nor does Mr. Price the Petitioner know how Ms. Mihocik obtained his address. But Mr. Price needing a Lawyer, could not think to refuse her assistance, as a layman in Law.
>
> However, petitioner wanted Att. Mihocik to further appeal habeas corpus Grounds 2-8, and he had no idea Att. Mihocik did not appeal all those grounds for relief to the Ohio Supreme Court until it was too late for petitioner to act.
>
> The United State Federal District Court is asked to review all grounds for relief 1-8, because Att. Mihocik had a duty to exhaust state remedies by raising those grounds for relief in the Memorandum in Support of Jurisdiction see Case No. 2013-1912 State v. Price (filed 12-5-2013 Ohio Supreme Court), certainly where the facts of this case show consensual sex between two adults.

ECF No. 1.  Respondent moved to dismiss the petition.  ECF No. 9.  Petitioner filed a Traverse.

ECF No. 11.  The magistrate judge issued a report and recommendation that recommended that the Court dismiss each of Petitioner's grounds for relief.  ECF No. 21.  Petitioner's timely objections followed.  ECF No. 23.

## II.  Standard of Review for a Magistrate Judge's Report and Recommendation

When objections have been made to a magistrate judge's report and recommendation, the district court's standard of review is *de novo*.  Fed. R. Civ. 72(b)(3).  A district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. 72(b)(3).  Near verbatim regurgitation of the arguments made in earlier filings are not true objections.  When an "objection" merely states disagreement with the magistrate judge's suggested resolution, it is not an objection for the purposes of this review.  *Cvijetinovic v. Eberlin*, 617 F. Supp. 2d 620, 632 (N.D. Ohio 2008), *rev'd on other grounds*, 617 F.3d 833 (6th

(1:15cv1627)

Cir. 2010).  Such "general objections" do not serve the purposes of Fed. R. Civ. P. 72(b).  *See*

*Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio April 7, 2006).  "A party

who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must

be mindful of the purpose of such objections: to provide the district court 'with the opportunity to

consider the specific contentions of the parties and to correct any errors immediately.'"  *Id.*

(citing *U.S. v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).  The Supreme Court upheld this

rule in *Thomas v. Arn*, 474 U.S. 140, 144 (1985), a habeas corpus case.

### III.  Standard of Review for Habeas Petitions

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended

28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus petitions

filed after that effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see also Woodford v.*

*Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences,

and 'to further the principles of comity, finality, and federalism.'"  *Woodford*, 538 U.S. at 206

(citing *Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  Consistent with this goal, when reviewing

an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a

state court, a determination of a factual issue made by a state court shall be presumed to be

correct.  *Wilkins v. Timmerman-Cooper*,  512 F.3d 768, 774–76 (6th Cir. 2008).  The petitioner

has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Wilkins*,  512 F.3d at 774.  A federal court may not grant habeas relief on

any claim that was adjudicated on the merits in any state court unless the adjudication of the

13

(1:15cv1627)

claim either (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States, or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d); *Wilkins,
512 F.3d at 774–76*.

A decision is contrary to clearly established law under 28 U.S.C. § 2254(d)(1) when it is

"diametrically different, opposite in character or nature, or mutually opposed" to federal law as

determined by the Supreme Court of the United States.  *Williams v. Taylor*, 529 U.S. 362, 405
(2000).  In order to have an "unreasonable application of . . . clearly established Federal law," the

state-court decision must be "objectively unreasonable," not merely erroneous or incorrect.  *Id.* at
409.  Furthermore, it must be contrary to holdings of the Supreme Court, rather than dicta.  *Id.* at
415.

A state court's determination of fact will be unreasonable under 28 U.S.C. § 2254(d)(2)

only if it represents a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528–29 (2003).  In

other words, a state court's determination of facts is unreasonable if its findings conflict with

clear and convincing evidence to the contrary.  *Id.*  "This standard requires the federal courts to

give considerable deference to state-court decisions."  *Forensic v. Birkett*, 501 F.3d 469, 472 (6th
Cir. 2007).  AEDPA essentially requires federal courts to leave a state court judgment alone

unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'"

*Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

14

(1:15cv1627)

### IV.  Procedural Barriers to Habeas Review

As a general rule, a state prisoner must exhaust all possible state remedies or have no

remaining state remedies before a federal court will review a petition for a writ of habeas corpus.

28 U.S.C. § 2254(b); *see Baldwin v. Reese*, 541 U.S. 27 (2004).  A petitioner satisfies the

exhaustion requirement when he presents his claims to a state supreme court for review of his

claims on the merits.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155,

160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

A claim is properly exhausted when it has been "fairly presented" to the state courts.  *See*

*Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th

Cir. 2003).  Fair presentation requires that the state courts be given the opportunity to see both

the factual and legal basis for each claim.  *Wagner*, 581 F.3d at 414.  In determining whether a

petitioner "fairly presented" a federal constitutional claim to the state courts, courts should

consider whether the petitioner (1) phrased the federal claim in terms of the pertinent

constitutional law or in terms sufficiently particular to allege a denial of the specific

constitutional right in question, (2) relied upon federal cases employing the constitutional

analysis in question, (3) relied upon state cases employing the federal constitutional analysis in

question, or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law."

*See Hicks v. Straub,* 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d

674, 681 (6th Cir. 2000)).  For the claim to be exhausted, it must be presented to the state courts

as a federal constitutional issue, not merely as an issue arising under state law.  *Koontz v. Glossa,*

731 F.2d 365, 369 (6th Cir. 1984).  Moreover, the claim must be presented to the state courts

(1:15cv1627)

under the same legal theory in which it is later presented in federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It cannot rest on a legal theory that is separate and distinct from the one previously considered and rejected in state court.  *Id.*  This does not mean that the petitioner must recite "chapter and verse" of constitutional law, but he is required to make a specific showing of the alleged claim.  *Wagner,* 581 F.3d at 415.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because the petitioner did not comply with a state procedural requirement.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state procedural grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735.

To determine if a claim is procedurally defaulted, a court must determine whether: (1) there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule, (2) whether the state courts actually enforced the state procedural sanction, and (3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *See*

16

(1:15cv1627)

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A claim that is procedurally defaulted in

state court will not be reviewed by a federal habeas court unless a petitioner can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or can

demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 751.  If a petitioner fails to show cause for his procedural default, the court

need not address the issue of prejudice.  *See Smith v. Murray*, 477 U.S. 527 (1986).

A federal court may review only federal claims that were evaluated on the merits by a

state court.  Claims that were not so evaluated, either because they had not been exhausted or

because they are procedurally defaulted, are not cognizable on federal habeas review.

### V.  Analysis

Petitioner objects to the magistrate judge's recommendations on Grounds One through

Seven, and Ground Nine.  The Court addresses Petitioner's objections in the order that he has

presented them.

#### A.  Ground One

Petitioner objects to the magistrate judge not considering the merits of Ground One.  In

Ground One, Petitioner contends that the prosecutor's use of perjured testimony at trial denied

Petitioner of his fundamental rights.  The magistrate judge recommended dismissal because

Petitioner had procedurally defaulted that ground by failing to raise the issue of perjured

testimony in state courts.  ECF No. 21 at PageID #: 1979–80.

Petitioner argues that he can demonstrate actual innocence to overcome the procedural

default.  ECF No. 23 at PageID #: 1999.  Petitioner argues that the statements of Judge

17

(1:15cv1627)

McCormick present new evidence of actual innocence.  *Id.*  This argument is without merit.  The

statements of Judge McCormick cited by Petitioner (ECF No. 9-1 at PageID #: 310–13, 319–20)

are portions of Judge McCormick's dissent in which he argues why he would have concluded

Petitioner's conviction of kidnapping was against the manifest weight of the evidence.  This is

not the type of evidence required for a habeas petitioner to successfully demonstrate actual

innocence.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible, such a claim [of

actual innocence] requires petitioner to support his allegations of constitutional error with new

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence—that was not presented at trial.").

     Alternatively, Petitioner argues that he can demonstrate cause and prejudice to overcome

the procedural default.  ECF No. 23 at PageID #: 2000.  Petitioner contends that ineffective

assistance of appellate counsel, as reflected in a letter from a state public defender, prevented him

from raising the issue before the Ohio Supreme Court.  ECF No. 23-1.  The letter does not

explain why Plaintiff did not raise the issue of perjured testimony in his appeal as of right.  ECF

No. 9-1 at PageID #: 148–49.  Even if the letter demonstrates cause for failing to present the

issue of perjured testimony to the Ohio Supreme Court, Petitioner had already procedurally

defaulted the claim by failing to raise it on appeal to the intermediate appellate court.  "The

doctrine of res judicata establishes that 'a final judgment of conviction bars a convicted

defendant who was represented by counsel from raising and litigating in any proceeding except

an appeal from that judgment, any defense or any claimed lack of due process that was raised or

could have been raised by the defendant at the trial, which resulted in that judgment of

(1:15cv1627)

conviction, or on an appeal from that judgment.'" *State v. Wilson*, 951 N.E.2d 381, 387 (Ohio 2011) (quoting *State v. Perry*, 226 N.E.2d 104, syllabus (Ohio 1967)); *see also State v. Roberts*, 437 N.E.2d 598, 601 (Ohio 1982) (holding that the doctrine of res judicata precludes a petitioner from asserting constitutional issues in a postconviction proceeding that were not raised "at the earliest possible time").

As important, Petitioner's claim that his appellate counsel was ineffective for failing to appeal certain issues to the Ohio Supreme Court is itself defaulted, because Petitioner did not raise the alleged error during his Rule 26(B) Application to Reopen Appeal.  "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Petitioner does not argue cause and prejudice to excuse this defaulted claim such that the Court may consider it as the cause to excuse the default of Ground One.

Petitioner is unable to overcome the procedural default of Ground One.  The Court overrules Petitioner's objection and adopts the recommendation of the magistrate judge as to Ground One.

### B.  Ground Two

Petitioner objects to the magistrate judge not considering the merits of Ground Two.  In Ground Two, Petitioner contends that his conviction for kidnapping with a sexual motivation specification was against the weight of the evidence and based on insufficient evidence.  The magistrate judge recommended dismissal because Petitioner had procedurally defaulted that ground by failing to raise the issue to the Ohio Supreme Court.  ECF No. 21 at PageID #: 1982.

19

(1:15cv1627)

Petitioner argues that the procedural default can be excused by demonstrating actual innocence or cause and prejudice.  ECF No. 23 at PageID #: 2000.  Petitioner relies on the same arguments he offered for Ground One: Judge McCormick's dissent is evidence of actual innocence and ineffective assistance of appellate counsel as the cause of his procedural default.  *Id.*  As stated above, Judge McCormick's dissent is not "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" necessary for a claim of actual innocence.  *Schlup*, 513 U.S. at 324.  Additionally, Petitioner is unable to assert ineffective assistance of appellate counsel as the cause to excuse procedural default because that claim itself is defaulted due to Petitioner's failure to raise the issue in state collateral proceedings.  *Edwards*, 529 U.S. at 453.

Petitioner is unable to overcome the procedural default of Ground Two.  The Court overrules Petitioner's objection and adopts the recommendation of the magistrate judge as to Ground Two.

### C.  Grounds Three Through Six

Petitioner objects to the magistrate judge not considering the merits of Ground Three through Six.  In Ground Three, Petitioner contends that the trial court denied him due process of law by failing to give an instruction to the jury of the affirmative defense of safe release.  In Ground Four, Petitioner asserts the he was denied due process of law because the evidence was insufficient to support a conviction for kidnapping when, according to Petitioner, the victim was released in a safe place.  In Ground Five, Petitioner claims that he was denied effective assistance of counsel because trial counsel failed to request a jury instruction related to the affirmative

(1:15cv1627)

defense of safe release and failed to address the kidnapping charge in final arguments at trial.  In

Ground Six, Petitioner argues that the trial court denied him due process of law when instructing

the jury that proof of motive is not required.  The magistrate judge recommended dismissal of

Grounds Three, Four, Five, and Six because Petitioner had procedurally defaulted on each

ground by failing to raise the issues to the Ohio Supreme Court.  ECF No. 21 at PageID #: 1984,

1988.

  Petitioner raises the same arguments regarding actual innocence and cause and prejudice

to overcome procedural default for Grounds Three, Four, Five, and Six.  ECF No. 23 at PageID

#: 2000 ("Honorable Judge based on the acts and evidence contained paragraphs 1-2 above, the

Petitioner objects to the Mag. Judge not addressing the Merits of Habeas corpus Grounds three,

four, five, six.").  For the same reasons articulated above, Petitioner's argument is without merit.

Specifically, Judge McCormick's dissent is not "exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence" necessary for a claim of actual innocence,

*Schlup*, 513 U.S. at 324, and Petitioner's defaulted claim of ineffective assistance of appellate

counsel does not satisfy the cause and prejudice standard for overcoming procedural default as to

Grounds Three, Four, Five, and Six.  *Edwards*, 529 U.S. at 453.  The Court overrules Petitioner's

objection and adopts the recommendation of the magistrate judge as to Grounds Three, Four,

Five, and Six.

  **D.  Ground Nine**

  Petitioner next objects to the magistrate judge not considering the merits of Ground Nine.

In Ground Nine, Petitioner contends that Attorney Mihocik provided ineffective assistance of

21

(1:15cv1627)

counsel both in discretionary appeal to the Ohio Supreme Court and  on collateral review.  The

magistrate judge recommended dismissal because Petitioner had procedurally defaulted Ground

Nine.  ECF No. 21 at PageID #: 1992–93.

Petitioner objects that the magistrate judge's recommendation because "the Mag. Judge is

wrong in ruling that the Martinez v. Ryan[, 132 S. Ct. 1309 (2012)] Supreme Court decision

should not be applied to the facts of Petitioner's case."  ECF No. 23 at PageID #: 2001.  Merely

stating disagreement with the magistrate judge's suggested resolution, however, is not a proper

objection.  *Cvijetinovic*, 617 F. Supp. at 632.  Moreover, Petitioner misinterprets the reach of

*Martinez*'s holding.  "Inadequate assistance of counsel at initial-review collateral proceedings

may establish cause for a prisoner's procedural default of a claim of ineffective assistance at

*trial*."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012) (emphasis added).  *Martinez*, however,

"does not concern attorney errors in other kinds of proceedings, including appeals from

initial-review collateral proceedings, second or successive collateral proceedings, and petitions

for discretionary review in a State's appellate courts."  *Id.* at 1320.  The magistrate judge,

therefore, correctly held that *Martinez* does not apply to Petitioner's case.

Even if the Court was free to consider the merits of Ground Nine, Petitioner has stated a

non-cognizable claim for ineffective assistance of counsel.  A petitioner cannot state a claim for

constitutionally ineffective assistance of counsel during proceedings to which he does not have a

constitutional right to counsel.  *Coleman*, 501 U.S. at 752.  "Our cases establish that the right to

appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected

suggestions that we establish a right to counsel on discretionary appeals."  *Pennsylvania v.*

22

(1:15cv1627)

*Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) and *Ross v. Moffitt*, 417 U.S. 600 (1974)).  Moreover, a petitioner does not have a constitutional right to an attorney in state post-conviction proceedings and, therefore, will not be able to state a claim for ineffective assistance of counsel during those proceedings.  *Coleman*, 501 U.S. at 752.  Accordingly, Petitioner's claim for ineffective assistance of counsel during his discretionary appeal to the Ohio Supreme Court and state collateral proceedings is non-cognizable under clearly established federal law.

Petitioner is unable to overcome the procedural default of Ground Nine, and, even if he were able to, states a non-cognizable claim for relief.  The Court overrules Petitioner's objection and adopts the recommendation of the magistrate judge as to Ground Nine, with modification to indicate that Ground Nine is also non-cognizable.

**E.  Ground Seven**

Petitioner objects to the magistrate judge not considering the merits of Ground Seven.  In Ground Seven, Petitioner contends that his due process rights were violated when the trial court prematurely gave a "*Howard* Charge"—Ohio's version of the *Allen* charge announced in *Allen v. United States*, 164 U.S. 492 (1896)—to the jury and ignored the concerns expressed by a juror who had alerted the trial court that he had an important upcoming business trip.  The magistrate judge recommended dismissal because Petitioner had procedurally defaulted that ground by failing to raise a federal issue to the Ohio Supreme Court.  ECF No. 21 at PageID #: 1990.  The magistrate judge also recommended, as an alternative basis for dismissal, that Petitioner had failed to state a non-cognizable claim for federal habeas relief.  ECF No. 21 at PageID #: 1992.

23

(1:15cv1627)

Petitioner's objection as to Ground Seven reads as follows: "And the Petitioner objects to the fact the Mag. Judge did not rule on the Merits of Ground Seven, because, Petitioner now stands convicted, his only conviction, which stands in the way of Petitioner clearing his name, because the State Judge would not take heed to the trial court jury's request." ECF No. 23 at PageID #: 2001. To the extent that Petitioner is objecting to the magistrate judge's recommendation generally, his objection is overruled because it is "not sufficient to alert the Court to alleged errors on the part of the Magistrate Judge." Jones v. Moore, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr. 7, 2006). To the extent that Petitioner is arguing that he is actually innocent of the charges, his objection is overruled because Petitioner does not offer "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" to allow the Court to consider an actual innocence claim. Schlup, 513 U.S. at 324.

Even if the merits of Petitioner's Ground Seven were able to be considered, the state courts did not reach a conclusion contrary to clearly established federal law. The last reasoned state court decision as to Ground Seven occurred on direct appeal to the state intermediate appellate court:

> {¶46} Next, appellant argues in his sixth assignment of error that the trial court prematurely issued a *Howard* charge to the jury. He also argues that the court ignored a juror who wanted to be excused due to an important business trip.
>
> {¶47} Where it appears to a trial court that a jury is incapable of reaching a consensus, the court, in its discretion, may make a last-ditch effort to prod the jury into reaching a unanimous verdict so long as its instructions are balanced, neutral, and not coercive. *Howard*, 42 Ohio St.3d 18, 24, 537 N.E.2d 188. Rejecting other alternatives, the Ohio Supreme Court dictated the instruction to be given:

24

(1:15cv1627)

> The principal mode, provided by our Constitution and laws, for
> deciding questions of fact in criminal cases, is by jury verdict. In a
> large proportion of cases, absolute certainty cannot be attained or
> expected. Although the verdict must reflect the verdict of each
> individual juror and not mere acquiescence in the conclusion of
> your fellows, each question submitted to you should be examined
> with proper regard and deference to the opinions of others. You
> should consider it desirable that the case be decided. You are
> selected in the same manner, and from the same source, as any
> future jury would be. There is no reason to believe the case will
> ever be submitted to a jury more capable, impartial, or intelligent
> than this one. Likewise, there is no reason to believe that more or
> clearer evidence will be produced by either side. It is your duty to
> decide the case, if you can conscientiously do so. You should listen
> to one another's arguments with a disposition to be persuaded. Do
> not hesitate to reexamine your views and change your position if
> you are convinced it is erroneous. If there is disagreement, all
> jurors should reexamine their positions, given that a unanimous
> verdict has not been reached. Jurors for acquittal should consider
> whether their doubt is reasonable, considering that it is not shared
> by others, equally honest, who have heard the same evidence, with
> the same desire to arrive at the truth, and under the same oath.
> Likewise, jurors for conviction should ask themselves whether they
> might not reasonably doubt the correctness of a judgment not
> concurred in by all other jurors.

*Id.* at paragraph two of the syllabus.

{¶48} "Whether a jury is irreconcilably deadlocked is a "'necessarily discretionary
determination'" for the trial court to make." *State v. Gapen*, 104 Ohio St.3d 358,
2004-Ohio-6548, 819 N.E.2d 1047, ¶ 127, quoting *State v. Brown*, 100 Ohio St.3d
51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 37, quoting *Arizona v. Washington*, 434
U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), fn. 28.

{¶49} Here, after deliberating for a day, the jury sent a communication to the trial
court indicating they could not reach a verdict. The jury, contrary to the trial
court's instructions, indicated they were "7 jury members for 'guilty' and 5 jury
members for 'not guilty'[;] where do we go from here?" The trial court discussed
this question with counsel for appellant and the state. The judge thought the jury
was indicating they were deadlocked and was inclined to give a *Howard* charge,
but was hesitant because the jury did not explicitly state this. The judge brought
the jury back into court and asked if the question meant the jury was deadlocked

(1:15cv1627)

and could not reach a verdict. The jury indicated it was deadlocked. The court
then gave the *Howard* charge.

{¶50} Following the *Howard* charge, the jury deliberated for another full day and
then sent two additional notes to the court stating that it was again deadlocked,
with nine in favor of conviction for rape and three finding appellant not guilty of
rape. Juror No. 13 indicated that he thought there was a high probability that the
jury would not reach a verdict and that he had an important business trip the
following day. He asked the court what his options were. The court issued the
following instruction over appellant's objection: "Each jury member is a member
of a deliberating jury. Each member is expected to stay with the deliberations until
the end. The court has no way of knowing when the jury will conclude its work."
The jury continued to deliberate, and on the evening of the second day, they
reached a verdict.

{¶51} Appellant asserts that the *Howard* charge and the court's response to juror
13's question was impermissibly coercive. However, there is no error with the
*Howard* charge. After a full day of deliberations, the jury indicated it was
deadlocked, and the court instructed it according to the language set forth by the
Ohio Supreme Court. The trial court did not abuse its discretion in so doing. *State
v. Rhines*, 2d Dist. Montgomery No. 24417, 2012-Ohio-3393 (charge issued after
11 hours of deliberations); *State v. McDowell*, 10th Dist. Franklin No. lOAP-509,
2011-Ohio-6815 (charge given after jury deliberated one and one half days); *State
v. Shepard*, 10th Dist. Franklin No. 07 AP-223, 2007-Ohio-5405, ¶ 11 (citing
cases where the charge has been upheld after only a few hours of deliberations).

{¶52} The court's response to juror No. 13 was also not an abuse of discretion.
The requirement that a juror remain as part of the deliberating body through the
end of trial is a necessary requirement to our system of trials. Further, juror No. 13
disclosed the business trip during voir dire and said that, should trial continue to
the date of the trip, it could be moved. This juror was not impermissibly placed
under compulsion to arrive at a verdict as appellant argues. The court's
instructions were impartial, measured, and, most important, not coercive.
Appellant's sixth assignment of error is overruled.

ECF No. 9-1 at PageID #: 299–302.  Were review not precluded by procedural default, Petitioner

would still not be entitled to relief because the decision of the state court is neither contrary to

nor an unreasonable application of clearly established federal law.  *Loza v. Mitchell*, 766 F.3d

466, 492–93 (6th Cir. 2014) (denying habeas relief on a claim asserting error in the trial court

(1:15cv1627)

giving a *Howard* charge); *Brown v. Bradshaw*, 531 F.3d 433, 437 (6th Cir. 2008) (same); *Mason v. Mitchell*, 320 F.3d 604, 641–42 (6th Cir. 2003) (same).

Petitioner is unable to overcome the procedural default of Ground Seven, and, even if he were able to, states a non-cognizable claim for federal habeas relief.  The Court overrules Petitioner's objection and adopts the recommendation of the magistrate judge as to Ground Seven.

### F.  Certificate of Appealability

"Determining whether a [Certificate of Appealability] should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding."  *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [Certificate of Appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 484.

In this case, the magistrate judge recommended that the Court issue a certificate of appealability as to Ground Seven because "an argument could be made that [Petitioner] did not procedurally default."  ECF No. 21 at PageID #: 1995.  This finding only addresses half of the inquiry under *Slack*.  Jurists of reason would not find it debatable whether the petition states a valid claim as to Ground Seven.  *Slack*, 529 U.S. at 484.  Importantly, Petitioner did not

27

(1:15cv1627)

specifically object to the magistrate judge's alternative recommendation that Ground Seven

presented a non-cognizable claim.  As important, as mentioned above, the state court decision

regarding the *Howard* charge is not contrary to or an unreasonable application of clearly

established federal law.

Accordingly, the Court modifies the magistrate judge's recommendation, and certifies

that there is no basis upon which to issue a certificate of appealability.

### VI.  Conclusion

For the aforementioned reasons, the Court overrules each objection, adopts the magistrate

judge's report and recommendation as modified herein, grants Respondent's motion to dismiss

(ECF No. 9), and dismisses the petition.  Furthermore, the Court certifies, pursuant to 28 U.S.C.

§ 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is

no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P.

22(b).


IT IS SO ORDERED.


 August 31, 2016                                 */s/ Benita Y. Pearson*
Date                                             Benita Y. Pearson
                                                 United States District Judge

28